We next call the case of 513-0472, In re the Marriage of Marvin Schultz v. Barbara Schultz. Mr. Gill. Oh, it's not Gil, it's Hill. Sorry, I don't have my right glasses on today. I apologize. At this court. Basically, it's a rather simple issue. It involves several different issues based upon what the court did in this case. As in the abstract of this new record, I went back and we basically put the entire record going back to the original divorce which came down to this court. I was counsel that came to this court. And basically at that time Mrs. Schultz got maintenance that was considered to be rehabilitative. It was understood at that time she might go back to school and she had a job where she was doing cleaning for people and she had increased that. That was 2001. Then we received a lot of history and there was a number of issues in this case. Basically, what has happened in this case is that Mr. Schultz has paid maintenance in 2001 over $100,000 to a wife who during that same period of time has done little or anything to improve her situation, try to help her situation. That's one of the issues and one of the issues we've argued in our brief and I'll talk about a little bit more. There are cases which we cited in the brief that at one point self-imposed poverty on themselves to award them or modify maintenance is an abuse of discretion which is a standard. The second problem we have in this case is that it was stipulated when Mr. Schultz filed his petition to terminate maintenance in anticipation of his retirement, which he did four months before he intended to retire. This case was not decided until a year later, which creates another situation of inequity that I think that they call Mr. Schultz. The situation is that it was stipulated at the trial that Mr. Schultz's income was her portion of Mr. Schultz's pension, Mr. Schultz's sole income was his Social Security and his portion of the pension. The court in this case, and there's always an issue because Mr. Schultz did voluntarily retire, that did he do so and what was his motivation? While the court makes the finding that he did voluntarily retire, we don't disagree with that. There's no finding in this which goes along with it that one retired voluntarily in order to avoid payment of maintenance. There's nothing in the record, no finding in the record that he did this. As a practical matter, Mr. Schultz was an electrician, worked in power plants. He worked according to sue. He was working, retired, in the water on River Road between where we were at all. In that job, it was testified in the record, that you do, you go outside, you're in all kinds of weather, up and down, walking concrete floors, you get an upright, good condition. The judge said we didn't put a medical proof that he couldn't work. And we didn't. There was another finding in there. But I can't find any case law that says that one has to work forever in order to support your spouse until you die. And basically, with the order in this case, reducing maintenance and continuing on in permanency, that's essentially what has happened in this case. The other problem is, is there was, during this period of time, Mr. Schultz has paid, he's never been, he's never been found in contempt ever for nonpayment of maintenance. He was never found in contempt ever for nonpaying child support. He also paid a lump sum to his wife for non-minor support, even though the kids involved were in and out of school many times. In fact, his youngest boy was living with Mrs. Schultz at the time of the trial. In this case, there's not a chance of doing nothing, and that's the testimony in the record. As of today, though, hasn't the court now said that the maintenance will be reduced when she starts receiving Social Security? Yes, but there's two different problems with that. Okay. All right. The one problem is there was never a petition to modify or increase the maintenance filed by Mr. Schultz. But the net effect of the judge's order in this case gives her more money than she had when we came in to ask for it to be terminated. The reason for it is the judge continues the $800 a month per year, even though she's starting to get four-half his pension. When did she start to get that? She got it the same time he did it, in July of 2012, when he retired. That's the other problem that the judge had in this case. The judge finds the change of circumstances is his voluntary retirement and the fact she's going to get Social Security here and ignores the fact that she got, in 2012 July, half his pension, her prior agreement, part of a marital settlement, and half his 401k plan, which is also prior agreement, which gets me back to the next point. And the next point is the case law is very clear. If you got a settlement agreement, you cannot modify that at a later date. And I cited the Mumford case, which this Court has had before it before. I cited McLaughlin. And those are cases that basically say when you have a sole source of income coming into your pension and you now order maintenance to be paid out of that pension, you're giving that person a double bill at the same money that was already divided up previously. Was there a reduction in the pension amount because of the early retirement? No. No. It was the full amount. The only reduction in the pension in this case was basically because Mr. Schultz worked for Illinois Power, taken over by Dynagy, they lost their money at Dynagy Stock, and stock went down. So there was loss of money in the 401k. That affected both people in this case. But I think the other thing that's important is that Mrs. Schultz came back after the initial order maintenance and asked it to be extended. At that time, Judge Harrison found in evidence that she was disabled, but also noted that she had not seen any psychiatric treatment, not taken her meds. She was not doing this, ordered her to do that. What she started to do, she did it for a period of time. Then she stopped it again. The last report we have, she was already having reports. The last report of record in this case was her psychiatrist, who she hasn't seen since that date, which was in 2008, said she was doing better, she was compliant, she was taking her meds. She could increase from part-time employment to full-time employment, and it would be good for her. What does she do? Nothing. She goes the exact opposite way. She's not. And she admitted it in a trial in this case. She's not taking medication. She's not seeing a psychiatrist. She said she applied for Social Security, but there was no proof of that disability before. There was never any document ever shown. She claimed some other health care problems, though, besides the panic disorder and the psychiatric issues. One was COPD, osteoarthritis, agoraphobia, and mitral valve prolapse. Is there? I know she's claimed those. I mean, I think it's in a medical record, isn't it? In a prior proceeding prior to this one, that's never been raised as any significant situation. And she's not. She never identified any physicians she's seen for any of those conditions. The only person she said she's seen is a psychologist occasionally. Well, in one of the briefs, there was some mention that the preexisting medical conditions prevented her from receiving health care at a reasonable rate. She was on food stamps and had no health insurance because of her preexisting medical conditions. I'm not aware of that. I don't know whether she had medical insurance or not. I do know that she had it at one point in time. I don't know whether she decided not to continue or what. I can't answer that question. Well, she didn't have it, though, and it was considered by the court as a needed expense that would at least allow for some justification of the continued maintenance. Well, I mean, I understand what the court is saying. But the other problem here is where are we going to get it? The court ruled in this case that I'm not going to go after just Social Security to pay the maintenance. All right? If he's only got that and his pension, then the court is saying you've got to pay part of your pension, which flies right in the face of the Mumford case, which I cited, and it's implicit in my document that I cited, which is a 2013 case. So, I mean, how do you do it? What's he supposed to do? I assume that what he's going to have to do, if this isn't changed, is that Mr. Schultz is going to have to go out and get a job at Walmart or someplace to pay his maintenance. And I think it's unfair. You've already made an agreement, an arrangement. And the other thing is, in this case, not only did the court order a division of pension, subsequent because the change from managing the only power, there was one quadro that didn't get done right. He agreed. When I was representing, we agreed to modify that and split up that pension, which is the primary pension she's getting now. So I think the court is erroneous in effect. It's going behind a property settlement and having him indirectly pay money that was already divided between the parties for his maintenance. I also think, under the cases I cited, and the gun case was one of them, I think you have to do something. You can't just deteriorate your own position in order to continue to receive maintenance. I think that's an abuse of discretion. And I think clearly, if the court looks at this case, Mrs. Shultz is done. Thank you. Thank you. Okay, Mr. Blunt. Between this morning and now? No, it was just as hard this morning. Never been as hard as this morning. But thanks for remembering me. You're unforgettable. I was afraid of that. Okay. Proceed. No, totally forgot. What I'm getting here is a retrial of the case that went before. You remember we heard that there was a 2001 disillusionment. And that was it. The disposition was appealed to this court. And at that time, what was affirmed was a judgment including rehabilitative maintenance reviewable after 24 months. Okay. Fast forward to 2007. Now, the circuit court orders my client to seek psychiatric care and finds her disabled and mentally ill. In 2009, the last time Madison County spoke on this, reduced her maintenance to $800 a month but no longer called it rehabilitative, no longer ordered her to seek treatment. So that, that 2009 judgment, $800 a month maintenance, not rehabilitative, not ordered her to seek treatment, that's the judgment that they're trying to modify here. What about his argument that you can't change a property settlement agreement? That now, in effect, he's going to make less on his pension because he's continuing to pay maintenance out of the pension. What about that argument? That's a good, I thought that was ingenious. That I said it? No. No, you remember, he said that, but I thought it was great that he wrote it. It took me a while to get it. You can tell I enjoy these, don't you? I do, too. Okay, the property settlement agreement, the property is one thing, but then we get to, but then, I mean, that's raised judicata. Now, we're at maintenance and what is the circuit court's authority to do something about it when he quits work? Now, he's the one that's saying, look, I quit, I voluntarily quit, I want out of my maintenance. He's the one that took the shot. He's asking the court to modify his 2009 obligation to his disabled ex-wife. And the court says, well, you did quit, but your testimony is that there's nothing wrong with you except it was, quote, the usual algorithmic, which I take means average for a person his age. No other evidence mentioned that he voluntarily quit his job. The court had the discretion at that point to say, well, that shouldn't change the obligation, but the court also had the discretion not to, and that's just what happened. That's all. That's all. But the court did say, well, wait a minute, you're going to get Social Security, and when you get Social Security, Mrs. Schultz, you won't need that much money anymore. And that was supposed to have happened already, correct? Well, that day has passed. It was in 2013. Yes. And actually it was – the deal was that when the order was added that she would still get the 800 for a couple more months and then get the 275, which would continue then on after that. Does that help? Uh-huh. So the funny thing is I didn't even realize it until I read the cases again for this argument, but this has happened to us. This happened in this room. Justice Goldberg wrote the opinion of the Schrift case, which is on page 10 of my brief, the blue brief. Mr. Schrift, he wanted his – he was retiring and he wanted his maintenance terminated, and he said all I'm getting is my Social Security and my pension and the income from a promissory note. And the promissory note was what he got when he sold the service station that he received in the property settlement. So everything he had was property he received out of Social Security, just like this. And this court held it that Justice – Judge Lew Lott wasn't within his discretion in saying no, you couldn't voluntarily, or you can't get out from under that obligation in that way. So this is already been biaged. This isn't – this doesn't really apply to the case, but stuff gets thrown in, we make it look bad, now we throw it the other way. Marvin, no question he's able to work. He said so. My client gets $594 a month. That was what the judge found, and it's not questioned. It's pension, food stamps. She does not have health insurance. She did explain in pages 34 and 35 of the transcript those conditions that you mentioned, Justice Cates, to keep her from getting health insurance. That's really not even in front of the court. It really is. Because that was – this is how she was in 2009. Two items were up for change in the maintenance obligation. One, that he quit. The court said no. That's the court's discretion. Another one, Social Security. The judge said yes. I think well, well within the court's discretion. It is important to note, because I keep hearing this, that the circuit court did not find that voluntary retirement was a substantial change in circumstances in this case. The court found that the substantial change in circumstances was the Social Security. Which one? The Social Security that she was going to get. So with that, again, noting the darned Humpstead-Shrimp cases, if there are no questions, I have no further argument. Thank you. All right. Thank you. Mr. Hill? Several things. Number one, the Shrimp case specifically found that Mr. Shrimp had outside income in addition to the pension, in addition to Social Security. That's one. The second thing the counsel didn't point out is that there was no fleeting asking for an increase in modification maintenance, but the net effect of continuing my client's maintenance obligation for an additional year, once you start to get her pension, increased it from $800 to over $1,300 a month. That's a fact. The delay in this case has put my guy, he said several months, he has to pay $800. It's $11,000-some-odd of what he has to pay. Now, we talked about Mrs. Schultz not having insurance and getting $598 a month. We're talking about one year. Now, I direct you to A92 in the brief, the appendix 92, and that is her financial statement. And if you look at her financial statement in this case file, you'll find that Mrs. Schultz, one, had approximately $14,000 worth of cash value life insurance, had an IRA account of $4,860, had the Ventac 401 pay plan of $45,000, had antiques of $800, had credential shares of $2,800, had cash in the bank, U.S. bank of $6,700, and cash associated bank of $5,200. In addition, she said she had a $1,400 mortgage on her property worth $49,000, her home, $49,000. And I doubt very seriously that anybody's going to find any home in Collinsville, Illinois worth only $49,000. And in addition, she had no half ownership in her mother's home in Lebanon, Illinois, which she said was worth $30,000 and had sat there for three years, not even attempting to rent it. Mrs. Schultz was not destitute. Mrs. Schultz doesn't want to work. Mrs. Schultz wants Mr. Schultz to have to continue to work in some method of payments. And no matter how you cut it, the court did not find what is required that his voluntary retirement was done to avoid paying her maintenance. There's no finding that back. Case law said it should be. Thank you. Thank you. Okay, this case will be taken under advisement and an opinion will be issued in due court.